UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                             :

BRIAN GALLAGHER, individually and on    :
behalf of others similarly situated,         :
                                             :

                     Plaintiff,    :      Civil Action No. 1:20-cv-3274
                                             :

       -against-              :      **CLASS ACTION COMPLAINT**
                                           :      **(JURY TRIAL DEMANDED)**

ST. JOHN'S UNIVERSITY,         :
                                             :

                    Defendant.    :
                                             :
-------------------------------------------------------------x

      Plaintiff, Brian Gallagher ("Plaintiff"), by and through undersigned counsel, brings this action against St. John's University ("Defendant" or the "University") on behalf of himself and all others similarly situated, and makes the following allegations based upon information, attorney investigation and belief, and upon Plaintiff's own knowledge:

## PRELIMINARY STATEMENT

      1.    Plaintiff brings this case as a result of Defendant's decision not to issue appropriate refunds for the Spring 2020 Semester after canceling in-person classes and changing all classes to an online/remote format, closing most campus buildings, and requiring all students who could leave campus to leave as a result of the Novel Coronavirus Disease ("COVID-19").

      2.    This decision deprived Plaintiff and the other members of the Classes from recognizing the benefits of on-campus enrollment, access to campus facilities, student activities, and other benefits and services in exchange for which they had already paid fees and tuition.

      3.    Defendant has either refused to provide reimbursement for the tuition, fees and other costs that Defendant failed to provide during the Spring 2020 Semester, or has provided

inadequate and/or arbitrary reimbursement that does not fully compensate Plaintiff and members of the Classes for their loss.

4.      This action seeks refunds of the amount Plaintiff and other members of the Classes are owed on a *pro-rata* basis, together with other damages as pled herein.

## PARTIES

5.      The University is an institution of higher learning located in Jamaica, New York.

6.      Upon information and belief, Defendant has an estimated endowment of approximately $748.9 Million and more than 16,000 enrolled students during the 2019-2020 academic year.

7.      Moreover, upon information and belief, Defendant was allocated more than $12.19 million of federal stimulus under the CARES Act. The CARES Act directs that institutions must use at least half of the funds they receive to provide emergency financial aid grants to students for expenses related to the disruption of campus operations due to COVID-19.

8.      Plaintiff is an individual and a resident and citizen of the State of New York, and was a student enrolled at the University during the Spring 2020 term.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

10.     This Court has personal jurisdiction over Defendant because Defendant conducts business in New York and has sufficient minimum contacts with New York.

11.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and because Defendant is an Institution domiciled and doing business in this District.

**BACKGROUND FACTS**

12.     Plaintiff was enrolled as a full-time student for the Spring 2020 academic semester at Defendant's institution.

13.      As a precondition for enrollment, Plaintiff was required to and did pay substantial tuition for the Spring 2020 semester either out of pocket or by utilizing student loan financing, as did all members of the putative Tuition Class (defined below).

14.     There are hundreds, if not thousands, of institutions of higher learning in this country.

15.     Some institutions of higher learning provide curriculum and instruction that is offered on a remote basis through online programming which does not provide for physical attendance by the students.

16.     Defendant's institution offers both in-person, hands-on programs, and fully online distance-learning programs, which it markets and prices as separate and distinct products.

17.     Plaintiff and members of the proposed Tuition Class (defined below) did not choose to attend another institution of higher learning, or to seek an online degree, but instead chose to attend Defendant's institution and specifically chose the on-campus program and enrolling on that basis.

18.     Defendant has recognized and admitted the inherent difference between its in-person and online products, and markets them separately throughout its website and other publications and circulars, including its academic catalogs.

19.     Accordingly, when students pay tuition in exchange for enrollment in the on-campus program, such students expect to receive, and Defendant has promised to provide, benefits and services above and beyond basic academic instruction, which include, but are not limited to:

- Face-to-face interaction with professors, mentors, and peers;
- Access to facilities such as computer labs, study rooms, laboratories, libraries, etc.;
- Student governance and student unions;
- Extra-curricular activities, groups, intramurals, etc.;
- Student art, cultures, and other activities;
- Exposure to community members of diverse backgrounds, cultures, and schools of thought;
- Social development and independence;
- Hands-on learning and experimentation; and
- Networking and mentorship opportunities.

20.     Plaintiff's education was changed from in-person, hands-on learning to online instruction during the Spring 2020 term.

21.     When this happened, Plaintiff was forced from campus and deprived of the benefit of the bargain for which he had paid, and in exchange for which Defendant had accepted, tuition as set forth more fully above.

22.     In addition to tuition, Defendant charges certain mandatory fees, including, but not limited to a:

- University General Fee;
- Student Government Activity Fee; and

- University Technology Fee.

23.     The University General Fee is charged to all registered students per semester regardless of modality.[1]

24.     The Student Government Activity Fee is assessed to all registered undergraduate students per semester regardless of modality.[2]

25.     The University Technology Fee is assessed to all registered undergraduate and graduate students per semester regardless of modality.[3]

26.     Plaintiff was required to and did pay all mandatory fees associated with his Spring 2020 enrollment.

27.     The University states that the University General Fee provides students "use of athletic facilities, the Counseling Center, Health Services, Library, Career Center, Transcripts, and Registration."[4]

28.     The University states that the Student Government Activity Fee "goes to student organizations in accordance with procedures set by the Student Government."[5]

29.     The Student Government ("SGI") "is responsible for the coordination and regulation of the undergraduate student activities and organizations on campus. SGI allocates funds from the Student Activity Fee to student organizations, SGI committees, college representative programming, and student development projects as well as to community building, service-focused, and social activities."[6]

---

[1] University Fees, https://www.stjohns.edu/admission/tuition-and-financial-aid/tuition/university-fees.
[2] Id.
[3] Id.
[4] Id.
[5] Id.
[6] Student Government, Inc., https://www.stjohns.edu/life-st-johns/new-york-city-your-campus/queens-campus-life/student-government-inc.

30.     For example, SGI allocates Student Activity funds to the "School Spirit" committee. This committee coordinates *staple events* to the St. John's mission (i.e. Winter Carnival) and work to create and program new ones.[7]

31.     The University states that the University Technology Fee provides students the "use and maintenance of the technology infrastructure, including wireless networking, general classroom technology, online content and specialized technology in lab spaces. The fee will also help fund new innovative teaching spaces and continue to infuse technology into learning spaces, exposing all registered students to the latest technology."[8]

32.     As a result of the actions and announcements of Defendant during the Spring 2020 term, Plaintiff and members of the Fees Class (defined below) no longer had the benefit of the services for which these fees were paid.  For example, Taffner Field House and the Campus Center were closed, student events and activities were cancelled, student organizations were no longer operational, and students who moved home no longer had the need for or access to the various health facilities.

33.     At Defendant's request and direction, Plaintiff and members of the Class lost access to any campus facilities and services thereon throughout the remainder of the Spring 2020 term.

## **FACTUAL ALLEGATIONS**

34.     Upon information and belief, Defendant's Spring term began with the first day of classes on or about January 22, 2020.[9]

---

[7] Student Government, Inc.: Committees, https://www.sjusgi.com/services.
[8] University Fees, https://www.stjohns.edu/admission/tuition-and-financial-aid/tuition/university-fees.
[9] St. John's University New York Academic Calendar 2019-2020, https://www.stjohns.edu/sites/default/files/uploads/2019-2020Academic%20Calendar%20Faculty%20Format.xls.pdf.

35.     Upon information and belief, Defendant's Spring term was scheduled to conclude with the last day of examinations on or about May 15, 2020 and commencement ceremonies on May 16, 2020 and May 17, 2020.[10]

36.     Accordingly, Defendant's Spring semester was scheduled and contracted to consist of approximately 115 days.

37.     However, as a result of the COVID-19 pandemic, Defendant announced on March 8, 2020 that it would begin delivering classes via electronic channels on March 12, 2020.[11]

38.     On or about March 11, 2020, Defendant announced that students would be required to move out of their residence halls (absent a waiver) and that the deadline to do so would be March 14, 2020.[12]

39.     Also, on March 14, 2020, Defendant began to close all on campus student facilities such as libraries and other buildings and non-essential offices.[13]

40.     On March 18, 2020, Defendant announced that all classes would be online for the remainder of the semester, in addition to a suspension of all events.[14]

41.     Almost immediately, students began demanding refunds for the fees and charges demanded in this action.

42.     Based on the dates set forth above, upon information and belief, Defendant's move to online classes and constructive eviction of students on March 14, 2020 deprived Plaintiff and

---

[10] St. John's University New York Academic Calendar 2019-2020, https://www.stjohns.edu/sites/default/files/uploads/2019-2020Academic%20Calendar%20Faculty%20Format.xls.pdf.
[11] An Update from the Office of the Provost and the Division of Student Affairs (Mar. 8, 2020), https://mailchi.mp/stjohns/covid-19-campus-update.
[12] A Letter from the Division of Student Affairs (Mar. 14, 2020), https://us3.campaign-archive.com/?u=b446252c72a0fb9c974661882&id=b9e4c84566.
[13] Id.
[14] A Letter from the Division of Student Affairs (Mar. 18, 2020), https://mailchi.mp/stjohns/recommended-health-actions.

other members of the Classes from access to campus facilities and in-person instruction for approximately 50% of the semester for which they had contracted.

43. Although Defendant continued to offer some level of academic instruction via online classes, Plaintiff and members of the proposed Tuition Class were deprived of the benefits of on-campus enrollment for which they paid as set forth more fully above.

44. These realities notwithstanding, Defendant has refused and continues to refuse to offer any refund whatsoever with respect to the tuition that has already been paid.

45. Likewise, Plaintiff and members of the proposed Fees Class were deprived of utilizing services for which they have already paid, such as access to campus facilities, student activities, health services and other opportunities.

46. While Defendant has refunded some of the fees, such refund has come with no explanation, is arbitrary, and in any event, is wholly insufficient.

47. Defendant has announced that it will be issuing full *pro-rata* refunds for room and board fees.[15]   Accordingly, this action does not seek to certify an On-Campus Housing Class or Meals Class for the recovery of those funds.  However, Plaintiff reserves the right to amend these allegations should Defendant fail or refuse to issue these refunds as promised.

## **CLASS ACTION ALLEGATIONS**

48. Plaintiff brings this action on behalf of himself and as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Classes:

**The Tuition Class:**

All people who paid tuition for or on behalf of students enrolled in classes at the University for the Spring 2020 semester but were denied live, in-person instruction

---

[15] Refund Request Form Spring 2020, https://apply.stjohns.edu/register/?id=b0ee5f38-6248-4988-aa46-2557f1dc0dc0.

and forced to use online distance learning platforms for the latter portion of that semester.

**The Fees Class:**

All people who paid fees for or on behalf of students enrolled in classes at the University for the Spring 2020 semester.

49.     Excluded from the Classes is St. John's University, and any of their respective members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the judicial officers, and their immediate family members, and Court staff assigned to this case.  Plaintiff reserves the right to modify or amend the Class definitions, as appropriate, during the course of this litigation.

50.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

51.     This action has been brought and may be properly maintained on behalf of the Classes proposed herein under Federal Rule of Civil Procedure 23.

**Numerosity: Fed. R. Civ. P. 23(a)(1)**

52.     The members of the Classes are so numerous and geographically dispersed that individual joinder of all members of the Classes is impracticable.  Plaintiff is informed and believes that there are thousands of members of the Class, the precise number being unknown to Plaintiff, but such number being ascertainable from Defendant's records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

<u>**Commonality and Predominance: Fed. R. Civ. P. 23(a)(2)**</u>

53.     This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

- Whether Defendant engaged in the conduct alleged herein;

- Whether there is a difference in value between enrollment in an online distance learning program and enrollment in a live, on-campus instructional program;

- Whether Defendant breached its contracts with Plaintiff and the other members of the Tuition Class by retaining the portion of their tuition representing the difference between the value of online distance learning and on-campus, in-person enrollment;

- Whether Defendant was unjustly enriched by retaining tuition payments of Plaintiff and the Tuition Class representing the difference between the value of online distance learning and on-campus, in-person enrollment;

- Whether Defendant breached its contracts with Plaintiff and the other members of the Fees Class by retaining fees without providing the services, benefits and/or programs the fees were contracted to cover;

- Whether Defendant was unjustly enriched by retaining fees of Plaintiff and the other members of the Fees Class without providing the services, benefits and/or programs the fees were intended to cover;

- Whether Defendant committed conversion as detailed above against Plaintiff and the other members of the Tuition Class;

- Whether Defendant committed conversion as detailed above against Plaintiff and the other members of the Fees Class;

- Whether Defendant violated New York General Business Law § 349, *et seq.* as to Plaintiff and the other members of the Tuition Class;

- Whether Defendant violated New York General Business Law § 349, *et seq.* as to Plaintiff and the other members of the Fees Class;

- Whether certification of any or all of the classes proposed herein is appropriate under Fed. R. Civ. P. 23;

- Whether Class members are entitled to declaratory, equitable, or injunctive relief, and/or other relief; and

- The amount and nature of relief to be awarded to Plaintiff and the other Class members.

### Typicality: Fed. R. Civ. P. 23(a)(3)

54.     Plaintiff's claims are typical of the other members of the Classes claims because, among other things, all members of the Classes were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein.

### Adequacy: Fed. R. Civ. P. 23(a)(4)

55.     Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of other members of the Class he seeks to represent.  Plaintiff has retained counsel competent and experienced in complex litigation and Plaintiff intends to prosecute the action vigorously.  The Classes' interests will be fairly and adequately protected by Plaintiff and his counsel.

### Superiority: Fed. R. Civ. P. 23(b)(3)

56.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the

management of this class action.  The damages or other financial detriment suffered by Plaintiff and other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Class to individually seek redress for Defendant's wrongful conduct.

57.     Even if Class members could afford individual litigation, the Court system likely could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, comprehensive supervision by a single court, and finality of the litigation.

### Certification of Specific Issues: Fed. R. Civ. P. 23(c)(4)

58.     To the extent that a Class does not meet the requirements of Rules 23(b)(2) or (b)(3), Plaintiff seeks the certification of issues that will drive the litigation toward resolution.

### Declaratory and Injunctive Relief: Fed. R. Civ. P. 23(b)(2)

59.     Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described herein, with respect to the Class members as a whole.

### FOR A FIRST COLLECTIVE CAUSE OF ACTION
### BREACH OF CONTRACT

### (Plaintiff and Other Members of the Tuition Class)

60.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

61.     Plaintiff brings this count on behalf of himself and other members of the Tuition Class.

62.    Plaintiff and the other members of the Tuition Class entered into contracts with Defendant which provided that Plaintiff and other members of the Tuition Class would pay tuition for or on behalf of students and, in exchange, Defendant would enroll such students and admit them to campus; granting them the full rights and privileges of student status, including, but not limited to, access to campus facilities, access to campus activities, and live, in-person instruction in a physical classroom.

63.    The rights and privileges of students at the University are set forth by Defendant through its website, academic catalogs, student handbooks, marketing materials and other circulars, bulletins, and publications.

64.    These rights and privileges form the basis of the bargain on which prospective students agree to accept Defendant's offer of enrollment in exchange for the payment of tuition and fees.

65.    One such right is the ability to be physically present on campus, and fully enjoy the facilities, services, and opportunities provided thereon, including the campus' location and surrounding opportunities on the school's seven campuses, including three in New York.[16]

66.    Defendant does not deny that the physical location of its campus is the main benefit of enrollment that attracts many students to the University.  See, e.g., ¶ 94.

67.    Likewise, Defendant's connection to the City of New York is acknowledged in the University Mission Statement, which states "As a metropolitan university, we benefit from New York City's cultural diversity, its intellectual and artistic resources, and its unique professional educational opportunities."[17]

---

[16] St. John's University Homepage: See What Awaits, https://www.stjohns.edu.
[17] Mission Statement of St. John's University, New York, https://www.stjohns.edu/about/history-and-facts/our-mission.

68.     Defendant's website and recruitment brochures are the primary means through which Defendant targets prospective new students and attempts to influence such students to apply for enrollment at its University as opposed to other institutions of higher learning.

69.     Through these publications, Defendant markets to and enrolls students in two separate and distinct products.

70.     Defendant specifically markets certain classes and degree programs as being offered on a fully online basis.

71.     Indeed, Defendant dedicates an entire section of its website to these programs, which can be accessed at https://online.stjohns.edu.

72.     Conversely, Defendant's publications with respect to non-online classes are full of references to the on-campus experience, including numerous references to student activities; campus amenities; class size and student/teacher ratios; campus diversity, campus location, and the like.

73.     When visitors enter the home page on Defendant's main website (www.stjohns.edu) they are greeted with a nearly full screen image of a New York City campus.

74.     Prospective students are directed to a link accompanying the image that states: "Stay Close. Stand Out. St. John's University has three beautiful campuses in the New York metropolitan area, so you can shine – without being far from home."[18]

75.     On this "Stand Out" page, prospective students are welcomed with a recruitment video captioned "A Place to Call Your Own."[19]

76.     Quoting this video, "…[A]bove all, St. John's gives you a place to call your own."[20]

---

[18] Stay Close. Stand Out, https://www.stjohns.edu/standout.
[19] Id.
[20] Id.

77.     The narration is transposed over dramatic music and visual depictions of campus buildings, campus activities, and three New York City locations of Queens, Manhattan, and Staten Island.[21]

78.     Below the video, that University represents: "Our students learn with the latest technology *in state-of-the-art facilities that feature new lab spaces, updated classrooms, and more.*"[22]

79.     Just below that representation, Defendant quotes a testimonial of Julia Mulroy, St. Anthony's High School Class of 2020, St. John's Class of 2024, which states, "My first time seeing the campus I immediately fell in love. I am eager to make new friends at St. John's."[23]

80.     On Defendant's "Life at St. John's" page, Defendant advertises, "With more than 180 clubs and organizations, intramural sports, and an active Greek life, there is always something to do on campus."[24]

81.     Further down on this page, prospective students read, "The Best of Everything: There is nothing like being on campus in dynamic New York City. Feel the energy of our student clubs and events, and Division I, NCAA athletics-and then take in the surrounding galleries, libraries, museums, plays, restaurants, and shopping."[25]

82.     Below that, prospective students further read, "Campus Life, Big City Edge: When you step on St. John's campus, you will not believe you are in the middle of New York City. Our Queens campus features nearly 100 acres of broad lawns and stately oak trees, timeless architecture, and modern residence halls-all just a short ride from Manhattan. The Staten Island

---

[21] Id.
[22] Stay Close. Stand Out, https://www.stjohns.edu/standout. (emphasis added)
[23] Id.
[24] Life at St. John's, https://www.stjohns.edu/life-st-johns.
[25] Id.

campus offers a small college vibe with all the resources of a major university. Explore what we have to offer."[26]

83.    In answering frequently asked questions, Defendant goes on to state:

- Both the library and Sullivan Computer Lab are open 24 hours.[27]

- The *state-of-the-art* fitness center is located in Carnesecca Arena. In addition to having stairmasters, treadmills, dumbbells, ellipticals, life fitness pin loaded machines, and plate loaded free weights, the fitness center also offers a wide variety of free fitness classes. Students also have access to an indoor and outdoor basketball court, tennis courts, soccer field, and outdoor track.[28]

- The Queens campus of St. John's University recently opened the D'Angelo Center, our 127,000 square foot luxury student life center. Boasting fourteen smart classrooms, *state-of-the-art* computer labs, a food court, our "campus living room," and the cheapest Starbucks in New York City, this student center will be enjoyed by students for generations to come.[29]

- The Campus Center at Staten Island features offices of Campus Ministry and Student Life along with a cafeteria, game room, student organization offices and a gymnasium.[30]

- The strikingly modern Manhattan campus contains plenty of meeting and classroom space along with fitness and computer lab facilities, *state-of-the-art* classrooms and an extensive library.

---

[26] Id.
[27] FAQs, https://www.stjohns.edu/admission/undergraduate-admission/faqs.
[28] FAQs, https://www.stjohns.edu/admission/undergraduate-admission/faqs. (emphasis added)
[29] Id.
[30] Id.

- Students are not able to apply to both campuses at this time and will need to select a campus when completing the undergraduate application for admission. If you would like to switch campuses after you submit your application, simply email us admhelp@stjohns.edu with your name, date of birth, and the campus you would like to attend.[31]

84.    Upon information and belief, there were no references or disclaimers in any of Defendant's websites, circulars, bulletins, publications, brochures, or other advertisements prior to January 28, 2020, that even referenced the possibility of in-person classes being changed to fully online classes at Defendant's discretion or for any other reason whatsoever after the start of a given term.[32]

85.    In fact, it is clear that, prior to the COVID-19 interruption, Defendant had no plans whatsoever to offer its in-person classes via an online delivery model.

86.    Those prospective students who are interested in enrolling at the University after consuming the marketing materials described above are invited to complete applications, and some are selected for and offered admission.

87.    When a student is offered admission to the University, that student receives a number of further communications and has a number of additional interactions with Defendant.

88.    Accepted students are directed toward the "Accepted Student Day Virtual Videos," which begins with a video entitled "Welcome Home, Future Johnnies."[33]

---

[31] Id.
[32] St. John's University New York Academic Calendar 2019-2020, https://www.stjohns.edu/sites/default/files/uploads/2019-2020Academic%20Calendar%20Faculty%20Format.xls.pdf.
[33] Accepted Student Day Virtual Videos, https://www.stjohns.edu/admission/undergraduate-admission/accepted-students/welcome-future-johnnies/accepted-student-day-virtual-videos.

89.     The video states "[S]tudents are able to exclusively access the Financial Information Lab with an up-to-the-second stock market ticker enabling our students to learn about financial markets and business environments."[34]

90.     The video further states, "For budding entrepreneurs, they can take advantage of our incubator, which is in a space adjacent to the Financial Markets Lab, and develop their ideas."[35]

91.     The video further states, " . . . [W]ith our New York City location, students are able to secure some of the top internships with many of the top business firms in the world."[36]

92.     The video further states, "We are proud to *offer state-of-the-art* labs for computer science and homeland security."[37]

93.     The video further states that students also have access to " . . . [O]ur brand new technology commons with access to virtual reality areas, e-sport stations, apple multi-media stations, 3-d printing and so much more."[38]

94.     The video further states, "Communication majors are afforded the opportunity *to take classes in* our brand new media arts and design, or better known as the "M.A.D." lab."[39]

95.     The video further states, " . . . [T]his includes apple stations with Syntac digitizers, as well as multimedia software for media editing and authoring and more."[40]

---

[34] Id.
[35] Id.
[36] Accepted Student Day Virtual Videos, https://www.stjohns.edu/admission/undergraduate-admission/accepted-students/welcome-future-johnnies/accepted-student-day-virtual-videos.
[37] Id. (emphasis added)
[38] Id.
[39] Id. (emphasis added)
[40] Id.

96.     The video further states, "Students taking classes in the fine arts and mass communications fields can look forward to learning in our newest innovative classroom on campus."[41]

97.     The video further states in reference to their pharmacy program: "Students are guaranteed their seat for the entire six years. They have access to *state-of-the-art* laboratories to refine their pharmacy skills, and prior to their experiential learning, they can utilize the pharmacy lab right on campus for practicing all the necessary skills for that year."[42]

98.     The video further states in reference to their educational program: "We prepare our students to be classroom ready by giving them the opportunity to experience a classroom setting during their freshman year."[43]

99.     Another recruitment video states, " . . . [W]hat I'll miss most about this place . . . is the people . . . these people have traveled from across the country and around the globe to learn and live at St. John's."[44]

100.    The same video continues to say, "Others travel on multiples trains or buses to get here, because it is here in our inclusive environment that they feel like they belong . . . we have found a home at St. John's."[45]

101.    A drone video on the same virtual videos page that tours Defendant's Queen's campus states students can come to the St. Thomas More Church, " . . . [E]veryday at 8:00am or 12:15pm to enjoy mass."[46]

---

[41] Id.

[42] Id. (emphasis added)

[43] Accepted Student Day Virtual Videos, https://www.stjohns.edu/admission/undergraduate-admission/accepted-students/welcome-future-johnnies/accepted-student-day-virtual-videos.

[44] Student Speech, https://www.stjohns.edu/admission/undergraduate-admission/accepted-students/welcome-future-johnnies/accepted-student-day-virtual-videos.

[45] Id.

[46] Droning Around, https://www.stjohns.edu/admission/undergraduate-admission/accepted-students/welcome-future-johnnies/accepted-student-day-virtual-videos.

102.    The "Accepted Student Day Virtual Videos" page contains multiple other videos such as: "Learning with the Latest Technology" which shows all of the lab spaces students at St. John's University are allowed to use, as well as videos entitled "Good Eats", "Fine Arts at St. Johns", "Art on Campus" as well as videos for their Rome Campus, Paris Location, and Ireland location.[47]

103.    The Limerick, Ireland video states "St. John's and Mary Immaculate students learn together in a *campus setting*."[48]

104.    That Defendant offered to provide, and members of the Tuition Class expected to receive, instruction on the physical campus is further evidenced by the parties' prior course of conduct.

105.    Those classes for which students expected to receive in-person instruction began the semester by offering in-person instruction.

106.    Each day for the weeks and months leading up to March 14, 2020, students attended physical classrooms to receive in-person instruction, and Defendant provided such in-person instruction.

107.    Likewise, upon information and belief, most students were provided with syllabi and other documents that referenced class meeting schedules, locations, and physical attendance requirements.

108.    Each day for the weeks and months prior to announced closures, students had access to the full campus.

---

[47] Accepted Student Day Virtual Videos, https://www.stjohns.edu/admission/undergraduate-admission/accepted-students/welcome-future-johnnies/accepted-student-day-virtual-videos.
[48] Limerick, Ireland, https://www.stjohns.edu/admission/undergraduate-admission/accepted-students/welcome-future-johnnies/accepted-student-day-virtual-videos. (emphasis added)

109.     Accordingly, it is clear that Defendant offered to provide live, in-person education, together with a full on-campus experience and that members of the Tuition Class accepted that offer by paying tuition and attending classes during the beginning of the Spring 2020 semester.

110.     Based on this mutual assent, Plaintiff and other members of the Tuition Class fulfilled their end of the bargain when they paid tuition for the Spring 2020 semester, either by paying out of pocket or by using student loan financing, or otherwise.

111.     However, the University breached the contract with Plaintiff and the Tuition Class by moving all classes for the Spring 2020 semester to online distance learning platforms, and restricting the on-campus experience without reducing or refunding tuition accordingly.

112.     This cause of action does not seek to allege "academic malpractice."

113.     Rather, it is clear from the facts and circumstances that Defendant offered two separate and distinct products, one being live, in-person, on-campus education, with its ancillary and related services and the other being online distance education.

114.     Plaintiff and members of the Tuition Class accepted Defendant's offer for live, in-person, on-campus education and paid valuable consideration in exchange.

115.     However, after accepting such consideration from Plaintiff and the Tuition Class, Defendant provided an entirely different product, which deprived Plaintiff and the Tuition Class of the benefit of the bargain for which they had already paid.

116.     Defendant retained tuition monies paid by Plaintiff and other members of the Tuition Class, without providing them the full benefit of their bargain.

117.     Plaintiff and other members of the Tuition Class have suffered damage as a direct and proximate result of Defendant's breach amounting to the difference in the fair market value of

the services and access for which they contracted and the services and access which they actually received.

118.     As a direct and proximate result of Defendant's breach, Plaintiff and the Tuition Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action, to include disgorgement of the difference between the fair market value of the online learning provided versus the fair market value of the live, in-person instruction in a physical classroom on a physical campus for which they contracted.

## FOR A SECOND COLLECTIVE CAUSE OF ACTION
## UNJUST ENRICHMENT

### (Plaintiff and Other Members of the Tuition Class)

119.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

120.     Plaintiff brings this count on behalf of himself and other members of the Tuition Class.

121.     This claim is pled in the alternative to, and to the extent it is determined a contract does not exist or otherwise apply, the contract-based claim set forth in the First Cause of Action above.

122.     Plaintiff and other members of the Tuition Class paid substantial tuition for live, in-person instruction in physical classrooms on a physical campus.

123.     Plaintiff and other members of the Tuition Class conferred a benefit on Defendant when they paid this tuition.

124.     Defendant has realized this benefit by accepting such payment.

125.     However, Plaintiff and members of the Tuition Class did not receive the full benefit of their bargain.

126.    Instead, Plaintiff and members of the Tuition Class conferred this benefit on Defendant in expectation of receiving one product, i.e. live, in-person, instruction in a physical classroom along with the on-campus experience of campus life as described more fully above, but they were provided with a completely different product carrying a different fair market value, i.e., online instruction devoid of the on-campus experience, access, and services.

127.    Defendant has retained this benefit, even though Defendant has failed to provide the services for which the tuition was collected, making Defendant's retention unjust under the circumstances.

128.    It is significantly cheaper for Defendant to provide the online product than the on-campus product.

129.    As a result of closing campus and moving classes online, Defendant saved significant sums of money in the way of reduced utility costs, reduced maintenance and staffing requirements, reduced or eliminated hours for hourly employees, reduced or eliminated hours for paid work study students, and otherwise.

130.    Simply put, it is significantly cheaper to operate a remote, on-line campus than a fully open physical campus.  But even if it was not, it is not the product that students contracted for, and not the product that they bought.

131.    Equity and good conscience require that the University return a portion of the monies paid in tuition to Plaintiff and other members of the Tuition Class.

132.    This cause of action does not seek to allege "academic malpractice."

133.    Defendant should be required to disgorge this unjust enrichment to the extent that Defendant has retained more than the fair market value for the product that Defendant was able to provide.

## FOR A THIRD COLLECTIVE CAUSE OF ACTION
## BREACH OF CONTRACT

### (Plaintiff and Other Members of the Fees Class)

134.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

135.    Plaintiff brings this count on behalf of himself and other members of the Fees Class.

136.    In addition to tuition, Defendant charges a number of mandatory fees.

137.    In its publications and, particularly on its website, Defendant specifically describes the nature and purpose of each fee.

138.    Some fees apply broadly to all or certain groups of students, while other fees are program or course based.

139.    Such fees are set forth not only in amount but also in description and purpose through the various academic catalogs and on the website.

140.    As such, it is axiomatic that the monies Plaintiff and other members of the Fees Class paid towards these fees were intended by both the students and Defendant to cover the services for which the fees were described and billed.

141.    The University General Fee is specifically stated to "use of athletic facilities, the Counseling Center, Health Services, Library, Career Center, Transcripts, and Registration."[49]

142.    The University states that the Student Government Activity Fee "goes to student organizations in accordance with procedures set by the Student Government."[50]

143.    The University states that the University Technology Fee provides students the "use and maintenance of the technology infrastructure, including wireless networking, general

---

[49] University Fees, https://www.stjohns.edu/admission/tuition-and-financial-aid/tuition/university-fees.
[50] Id.

classroom technology, online content and specialized technology in lab spaces. The fee will also help fund new innovative teaching spaces and continue to infuse technology into learning spaces, exposing all registered students to the latest technology."[51]

144.     As such, in accepting these terms and paying these fees, a contract was formed between Plaintiff, including the Fees Class, and Defendant, which provided that Plaintiff and other members of the Fees Class would pay these fees for or on behalf of themselves and, in exchange, Defendant would provide or make available the services, benefits and/or programs related to those fees, as promised.

145.     It is undisputed that Defendant did not provide use of athletic facilities, the counseling center, health services, library, career center, student organization activities, on-campus printing facilities, classroom technology, and specialized technology in lab spaces access.

146.     Plaintiff and other members of the Fees Class fulfilled their end of the bargain when they paid these fees for the Spring 2020 semester, either by paying out of pocket or by using student loan financing, or otherwise.

147.     However, Defendant breached the contract with Plaintiff and the Fees Class by moving all classes for the Spring 2020 semester to online distance learning platforms, constructively evicting students from campus, closing most campus buildings and facilities, and cancelling most student activities.

148.     By retaining fees paid by Plaintiff and other members of the Fees Class, without providing them the full benefit of their bargain, Defendant has not performed its contractual obligations.

---

[51] Id.

149.    Plaintiff and other members of the Fees Class have suffered damage as a direct and proximate result of Defendant's breach, namely being deprived of the value of the benefits services and/or programs the fees were intended to cover.

150.    As a direct and proximate result of Defendant's breach, Plaintiff and the Fees Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action, to include disgorgement of the *pro-rata* amount of fees that were collected but for which services were not provided.

**FOR A FOURTH COLLECTIVE CAUSE OF ACTION**
**UNJUST ENRICHMENT**

**(Plaintiff and Other Members of the Fees Class)**

151.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

152.    Plaintiff brings this count on behalf of himself and other members of the Fees Class.

153.    This claim is pled in the alternative to, and to the extent it is determined a contract does not exist or otherwise apply, the contract-based claim set forth in the Third Cause of Action above.

154.    Defendant has received a benefit at the expense of Plaintiff and other members of the Fees Class to which it is not entitled.

155.    Plaintiff and other members of the Fees Class paid substantial student fees for on-campus benefits, access and services and did not receive the full benefit of the bargain.

156.    Plaintiff and other members of the Fees Class conferred this benefit on Defendant when they paid the fees.

157.    Defendant realized this benefit by accepting such payment.

158.    Defendant has retained this benefit, even though Defendant has failed to provide the services, benefits and/or programs for which the fees were collected, making Defendant's retention unjust under the circumstances.

159.    It is significantly cheaper for Defendant to provide the online product than the on-campus product.

160.    As a result of closing campus and moving classes online, Defendant saved significant sums of money in the way of reduced utility costs, reduced maintenance and staffing requirements, reduced or eliminated hours for hourly employees, reduced or eliminated hours for paid work study students, and otherwise.

161.    Simply put, it is significantly cheaper to operate a remote, on-line campus than a fully open physical campus.

162.    Equity and good conscience require that Defendant return a *pro-rata* portion of the monies paid in fees to Plaintiff and other members of the Fees Class.

163.    Defendant should be required to disgorge this unjust enrichment to the extent that Defendant has retained more than the fair market value for the product that Defendant was able to provide.

## FOR A FIFTH COLLECTIVE CAUSE OF ACTION
## CONVERSION

### (Plaintiff and Other Members of the Tuition Class)

164.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

165.    Plaintiff brings this count on behalf of himself and other members of the Tuition Class.

166.    The two key elements of conversion are (1) Plaintiff's legal ownership or an immediate superior right of possession to a specific identifiable thing, and (2) Defendant's unauthorized dominion over the thing in question or interference with it, to the exclusion of Plaintiff's right.

167.    Plaintiff and members of the Tuition Class have an identifiable legal ownership to the right and services of an in-person, on-campus educational experience and paid tuition funds for the same.

168.    As set forth above, Defendant has not provided those services or access to the exclusion of Plaintiff's and other members of the Tuition Class's rights.

169.    As set forth above, Plaintiff and the Tuition Class have not, to date, received from Defendant a proper reimbursement for tuition paid to Defendant for the 2020 Spring semester.

170.    Defendant has received and retained possession of Plaintiff's and the Tuition Class's full payments for tuition for the 2020 Spring semester.

171.    Defendant's continued possession of the full payments for the 2020 Spring semester tuition is adverse and in derogation of Plaintiff's and the Tuition Class's entitlement to such funds.

172.    Defendant refuses to remit Plaintiff's and the Tuition Class's reimbursement for tuition paid for the 2020 Spring semester.

173.    Defendant has therefore converted and continues to convert Plaintiff's and the Tuition Class's 2020 Spring semester tuition.

## FOR A SIXTH COLLECTIVE CAUSE OF ACTION
## CONVERSION

### (Plaintiff and Other Members of the Fees Class)

174.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

175.    Plaintiff brings this count on behalf of himself and other members of the Fees Class.

176.    The two key elements of conversion are (1) Plaintiff's legal ownership or an immediate superior right of possession to a specific identifiable thing, and (2) Defendant's unauthorized dominion over the thing in question or interference with it, to the exclusion of Plaintiff's right.

177.    Plaintiff, and members of the Fees Class, have an identifiable legal ownership to the right and services of an in-person, on-campus educational experience and paid fees for the same.

178.    As set forth above, Defendant has not provided or made available those services, benefits, programs and/or access thereto, to the exclusion of Plaintiff's and other members of the Fee Class's rights.

179.    As set forth above, Plaintiff has not, to date, received from Defendant a proper reimbursement for fees paid to Defendant for the 2020 Spring semester.

180.    Defendant has received and retained possession of Plaintiff's full payments for fees for the 2020 Spring semester.

181.    Defendant's continued possession of the full payments for 2020 Spring semester fees is adverse and in derogation of Plaintiff's entitlement to such funds.

182.    Defendant refuses to remit to Plaintiff a reimbursement for fees paid for the 2020 Spring semester.

183.    Defendant has therefore converted and continues to convert Plaintiff's 2020 Spring semester fees.

### FOR A SEVENTH COLLECTIVE CAUSE OF ACTION
### VIOLATIONS OF NY GENERAL BUSINESS LAW § 349, § 350, *ET SEQ.*

### <u>(Plaintiff and Other Members of the Tuition Class)</u>

184.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

185.    Plaintiff brings this count on behalf of himself and other members of the Tuition Class.

186.    New York General Business Law § 349: Deceptive Acts and Practices Unlawful provides for consumer protection by declaring as unlawful "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state . . . ."

187.    New York General business Law § 350: False Advertising Unlawful provides for "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

188.    Defendant, through its agents, servants, and employees, engaged in unlawful, unfair, deceptive and fraudulent acts and practices in violation of New York General Business Law § 349, § 350, *et. seq.* by engaging in the activities described herein.

189.    Defendant is a private university which, among other things, offered in-person, hands-on curriculum to Plaintiff.

190.    Plaintiff are consumers who have paid substantial tuition and fees to attend in-person, hands-on curriculum at Defendant's University for the Spring 2020 semester.

191.    Defendant's efforts to sell its services to prospective students, which included Plaintiff, was "consumer-oriented."

192.    As part of its marketing practices and recruitment efforts, as described above, Defendant made numerous statements, representations and omissions to the public (including Plaintiff and members of the Tuition Class) with respect to the in-person educational opportunity and on-campus experience that students who enrolled at the Defendant would receive.  Such

statements, representations and omissions, which were uniform and identical in nature, were intended to induce potential students to enroll at the University for the Spring 2020 semester.

193.    With the reasonable expectation that students who enrolled at the University would receive in-person academic instruction with an on-campus experience for the entire 2020 Spring semester, Plaintiff and other members of the Tuition Class paid tuition to Defendant.

194.    However, students did not receive an in-person academic instruction with on-campus experience, access and services for the entire 2020 Spring semester. As a result, Plaintiff and other members of the Tuition Class were proximately caused to pay inflated tuition because they were deprived of in-person academic instruction and an on-campus experience, access and services for the Spring 2020 semester.

195.    Therefore, the aforementioned statements, representations and omissions made by the University were objectively false, misleading and deceptive to Plaintiff and the other Tuition Class Members, as well as the public at large.

196.    Defendant's above-alleged actions constitute unfair business practices since the actions were deceptive and injurious to Plaintiff and other members of the Tuition Class because students enrolled for the Spring 2020 term did not benefit from on-campus academic instruction and a unique on-campus experience during the entire spring term.

197.    In fact, Plaintiff and other students were not permitted to receive and benefit from on-campus academic instruction and a unique on-campus experience during the entire Spring 2020 semester.

198.    Defendant's acts and practices were designed to lead potential students, and the public, to believe that if students enrolled at the University then they would be entitled to receive in-class instruction and a unique campus experience for the entire Spring 2020 semester.

199.    Plaintiff and the other Tuition Class Members were deceived and injured because students did not receive in-class instruction and a unique campus experience for the entire Spring 2020 semester.

200.    As a result of Defendant's foregoing violations of New York General Business Law § 349, § 350, *et seq.*, Defendants have directly and proximately caused damage to Plaintiff and other members of the Tuition Class and are entitled to recover actual damages in an amount to be determined at trial, and an award of reasonable attorney's fees, expenses, costs and disbursements.

### FOR AN EIGHTH COLLECTIVE CAUSE OF ACTION
### VIOLATIONS OF NY GENERAL BUSINESS LAW § 349, § 350 *ET SEQ.*

#### (Plaintiff and Other Members of the Fees Class)

201.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

202.    Plaintiff brings this count on behalf of himself and other members of the Fees Class.

203.    Defendant's actions constitute unlawful, unfair, deceptive and fraudulent practices as defined by New York's Deceptive Acts and Practices Law, NY General Business Law § 349, § 350, *et seq.*

204.    Consumer-oriented conduct has been defined as conduct that potentially affects similarly situated consumers.

205.    Defendant is a private university which, among other things, offered in-person, hands-on curriculum to Plaintiff and its efforts to sell its services to prospective students, which included Plaintiff were "consumer-oriented."

206.    Plaintiff and other members of the Fees Class were required to pay certain mandatory fees as a condition to student enrollment at the University for the Spring 2020 semester,

including the University General Fee, the Student Government Activity Fee, and the University

Technology Fee.

207.    As discussed above, Defendant made statements, representations and omissions to

the public, including Plaintiff and other members of the Fees Class, with respect to such fees.

208.    These statements, representations and omissions, which were uniform and identical

in nature, were intended to induce potential students, including Plaintiff and members of the Fees

Class, to enroll at the University and pay or cause to have paid mandatory fees for the Spring 2020

semester.

209.    With the reasonable expectation that students who enrolled at the University would

be entitled to receive services, programs and/or benefits for which fees were charged for the entire

Spring 2020 semester, Plaintiff and other members of the Fees Class agreed to pay such fees.

210.    However, students did not receive the services, programs and/or benefits for which

fees were charged for the entire Spring 2020 semester.  As a result, Plaintiff and other members of

the Fees class were proximately caused to overpay such fees because the related services, programs

and/or benefits were not available to students for the entire Spring 2020 semester.

211.    Therefore, the aforementioned statements, representations and omissions made by

the University were objectively false, misleading and deceptive to Plaintiff and the other Fee

Members, as well as the public at large.

212.    Defendant's above-alleged actions constitute unfair business practices since the

actions were deceptive and injurious to Plaintiff and other members of the Fees Class because

students enrolled at the University did not receive services, programs and/or benefits for which

fees were paid for the entire Spring 2020 semester.   In fact, Plaintiff and other students were not

permitted to remain on-campus for the entire Spring 2020 semester and University facilities were closed before the semester concluded.

213.    Defendant's acts and practices were designed to lead potential students, and the public, to believe that if students enrolled at the University and paid the mandatory fees then they would be entitled receive the services, programs and/or benefits for which such fees were charged and paid for the entire Spring 2020 semester.

214.    Plaintiff and the other Fees Class Members were deceived and injured because students were not entitled to receive the services, programs and/or benefits for which the mandatory fees were charged and paid for the entire Spring 2020 semester.

215.    As a result of Defendant's foregoing violations of New York General Business Law § 349, § 350, *et. seq.*, Defendants have directly and proximately caused damage to Plaintiff and other members of the Fees Class and are entitled to recover actual damages in an amount to be determined at trial, and an award of reasonable attorney's fees, expenses, costs and disbursements.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of members of the Classes, prays for judgment in their favor and against Defendant as follows:

A.    Certifying the Classes as proposed herein, designating Plaintiff as Class representative, and appointing undersigned counsel as Class Counsel;

B.    Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this action;

C.    Declaring that Defendant has wrongfully kept monies paid for tuition and fees;

D.    Requiring that Defendant disgorge amounts wrongfully obtained for tuition and fees;

E.      Awarding injunctive relief as permitted by law or equity, including enjoining Defendant from retaining the pro-rated, unused monies paid for tuition and fees;

F.      Scheduling a trial by jury in this action;

G.      Awarding Plaintiff's reasonable attorney's fees, costs and expenses, as permitted by law;

H.       Awarding pre and post-judgment interest on any amounts awarded, as permitted by law; and

I.      Awarding such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

Dated: July 21, 2020

**MOREA SCHWARTZ BRADHAM
FRIEDMAN & BROWN LLP**

By: */s/ Peter B. Katzman*
Peter B. Katzman
John M. Bradham
444 Madison Avenue, 4th Floor
New York, NY 10022
Tel: (212) 695-8050
Email: pkatzman@msbllp.com
          jbradham@msbllp.com

**ANASTOPOULO LAW FIRM, LLC**

By: */s/Roy T. Willey, IV*
Roy T. Willey, IV *
Eric M. Poulin *
32 Ann Street
Charleston, SC 29403
Tel: (843) 614-8888
Email: roy@akimlawfirm.com
          eric@akimlawfirm.com

**TOPTANI LAW PLLC**
Edward Toptani
375 Pearl Street, Suite 14106
New York, NY 10038
Tel: (212) 699-8930
Email: edward@toptanilaw.com


*\*Pro hac vice motion forthcoming*